Alan Kang, Esq. (Bar No. 235080)
**AK LAW, A.C.P.C.**
333 City Blvd. West, 17th Floor
Orange, CA 92868-5905
Telephone: (714) 388-6937
Facsimile: (855) 820-1099
Email: alan@aklawacpc.com

*Counsel for Plaintiffs & the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNDA CYTRYN, individually; LATAI LATU, individually; COLBY GREEN, individually; KARILYN JOHNSON, individually; JENNIFER SHAFER, individually; JENNIFER-DAY MCCOY, individually; AMANDA TINSLEY, individually; CHARLOTTE HERRIOTT, individually; CHRISSY SULIVAN, individually; HEATHER UBER, individually; DARLENE NOBELS, individually; and BRITTANY THOMPKINS, individually; all Plaintiffs on behalf of those similarly situated; | CASE NO: **8:23-cv-01218-CJC-KES** <br><br> **AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** <br><br> Judge: Hon. Cormac J. Carney <br> Complaint Filed: July 7, 2023 <br> Trial Date: None Yet |
| *Plaintiff,* | |
| vs. | |
| CRUMBL, LLC dba Crumbl Cookies, a Utah limited liability company; CRUMBL ENTERPRISES LLC, a Utah limited liability company; CRUMBL IP, LLC, a Utah Limited Liability Company; CRUMBL FRANCHISING, LLC, a Utah Limited Liability Company; and DOES 1–10; | |
| *Defendants* | |

Plaintiffs Lynda Cytryn, Latai Latu, Colby Green, Karilyn Johnson, Jennifer Shafer, Jennifer-Day Mccoy, Amanda Tinsley, Charlotte Herriott, Chrissy Sulivan, Heather Uber, Darlene Nobels, and Brittany Thompkins ("Plaintiffs"), by their undersigned attorney, bring this Amended Class Action Complaint, on



behalf of herself and others similarly situated, against Defendants Crumbl, LLC dba Crumbl Cookies; Crumbl Enterprises LLC; Crumbl IP, LLC; Crumbl Franchising, LLC; and Does 1-10 ("Defendants"). This action seeks damages and any other available legal or equitable remedies resulting from the unfair, unlawful and/or fraudulent and unconscionable practice of grossly misrepresenting the calorie content of Defendants' "Crumbl Cookies" (the "Products") on the packaging and/or in advertising for the Products. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge. Unless otherwise stated, Plaintiffs allege that any violations by Defendants were knowingly and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid such violation.

## PARTIES

1. Plaintiff Linda Cytryn is 81 year old grandmother and Taekwondo blackbelt. She was at all times relevant a citizen of the state of California residing in Anaheim in Los Angeles County. She makes great efforts to stay in shape and active at her age, and monitoring her calories is a key component. She was completely unaware that her Crumbl cookie was over 800 calories. On or around June 12, 2023, Plaintiff purchased a Peanut Butter Reese's cookie from a Crumbl franchisee in Anaheim, California.

2. Plaintiff Latai Latu is a mother of active children who is religious about her calorie counting due to health concerns in her family. She was at all times relevant citizen of the state of Utah. With a large family, she would buy large packs of cookies for her family for special occasions, and consume the cookies with her children and relatives on a regular basis. When she found out about the true calories per cookie she was shocked and betrayed, as she had been visiting the Defendants' establishments from when it first opened around six years ago.

3. Plaintiff Colby Green is and was at all times relevant a citizen of the state of Texas. Colby was an enthusiastic supporter of Crumbl Cookie products and even a member of the Defendants' rewards program. Colby purchased Crumbl Cookies on or about late November 2022 to May 8, 2023 at a store in New Braunsfels, Texas.

4. Plaintiff Karilyn Johnson is and was at all relevant times a citizen of the state of Florida. She purchased a lot of varieties of Defendants' Products as recently as August 2023 until her daughter mentioned



the true number of calories of each cookie.  She was shocked that the calories stated on Defendants' menus were far less than the actual calories per advertised menu item.

5. Plaintiff Jennifer Shafer is and was at all times a relevant a citizen of the state of New Jersey. She has purchased Defendants' Products a few times over the past year and usually purchases a variety of whatever specials they are providing. She was surprised when she found out about the misleading calorie count and has stopped going to Defendants' establishments while she assesses the situation.

6. Plaintiff Jennifer Day-Mccoy is and was at all times relevant a citizen of the state of North Carolina.  Jennifer uses Defendants' Crumbl app and to place her orders for Defendants' Products. She saw Defendants' Products advertised on tik tok as a healthy and wholesome lower calorie treat and started purchasing the Products in late 2021. Her last purchase was around May of 2022 because she would feel so full after eating one of Products and found them to be very sweet and sugary tasting. She would order the Products in 3-4 packs and had varieties like Captain Crunch and Lemon

7. Plaintiff Amanda Tinsley is and was at all times relevant a citizen of the state of Washington. Amanda is a widow of a United States Marine and a single mother of two small children who lives partially off survivor benefits.  As a monthly treat on pay day, Amanda would treat herself and her two young children to a 4-pack of Defendants' Products.  After her children would consume the Products, she would see them become bloated and their energy would crash.  Amanda was also suffering from food sensitivity at the time she consumed the Products.  Believing that the Products were a low-calorie option around 200 calories, she would consume the Products regularly, putting the Products in the freezer to eat for later. During this time, her weight skyrocketed to 205lbs., despite being only five feet one inch tall.  Despite working out daily, she became so frustrated and depressed with her weight gain, and inability to shed the pounds, she consulted her doctor.  Her doctor advised her to stop eating the Products, and this helped her return her weight to a manageable level.

8. Plaintiff Charlotte Herriott is and was at all times relevant a citizen of the state of South Carolina. She has been Defendants' customer for at least two years since they opened a store in her location. She is a reward member and has the app with a history of her purchases from Defendants. She agrees the advertisement of the Products' calories by Defendant is misleading as she is trying to watch her sugar consumption.

AK LAW ACPC
ORANGE COUNTY

9. Plaintiff Chrissy Sullivan was and is at all times relevant a citizen of the state of Oregon. Chrissy has Defendants' app that shows her entire history of purchases since downloading the app and is a rewards member. Chrissy agrees that the Defendants' calorie count of the Products was misleading.

10. Plaintiff Heather Uber was and is at all times relevant a citizen of the state of New York.  She had a subscription the Defendants and had the Defendants' app.  Heather is diabetic and eating the Products at one point caused her to have a diabetic shock episode due to the sugar content, so she was very disheartened to hear about the Products' fraudulent calorie count.

11. Plaintiff Darlene Nobles is and was at all relevant times a citizen of the state of Alabama. Darlene started buying Defendants' Products two (2) years ago. She is a rewards member and remembers nearly all of her purchases from Defendant. Her favorite Products were chocolate chip and waffle cookies.

12. Plaintiff Brittany Thompkins is and was at all relevant times a citizen of the state of Georgia. She purchased Defendants' Products from December 2022 to July 2023.  She bought the Products believing they were healthy and low in calories because of the calories displayed on Defendants' menus.  She even gave the Products to her thirteen-year-old daughter regularly because of her mistaken belief that Defendants' menu showed the calorie count for one whole cookie.  She also recently gave birth to a new baby, and was disappointed her dietary choices did not reflect her actual wishes because of Defendants' decision to avoid disclosing the actual per cookie calorie amount on its menus.

13. All of the Plaintiffs purchased Defendants' Products in their respective states, and combined with all class members, purchased nearly all of Defendant's available Products including the following Products: Milk Chocolate Chip, Rocky Road, Honey Bun, Strawberry Cake, Cookie Butter White Chip, Raspberry Butter Cake, Mom's Recipe, Lemon Cheesecake, Maple Oatmeal, Dulce De Leche, Cake Batter, Original M&M, Semi-sweet Chocolate Cake, Chocolate Crumb featuring Oreo, Smores, Cookies & Cream, Confetti, Reese's, Chilled Sugar, Caramel Apple, Key Lime Pie, Coconut Lime, PB&J, Oreo, Twix, Ultimate Peanut Butter, Cinnamon Swirl, Snickerdoodle, Raspberry Cheesecake, Red Velvet White Chocolate, Muddy Buddy, Sea Salt Butterscotch Pretzel, Dark Dream Brownie, and more.

14. All of the Plaintiffs are intentional eaters who seek to track their calorie intake. As such all Plaintiffs reviewed the nutritional information disclosures on Defendants' in-store menus, and relied on that information when making their decision to purchase the Products. Plaintiffs desired to make sure that their

AK LAW ACPC
ORANGE COUNTY
CALIFORNIA

calorie consumption fit within their lifestyle and eating plans.

15. Defendant Crumbl Cookies is a Utah limited liability company with its headquarters and principal place of business in Orem, Utah. On information and belief, decisions regarding labelling and disclosure of nutritional content are made in its Utah headquarters.

16. Defendant Crumbl Enterprises LLC is a Utah limited liability company with its headquarters and principal place of business in Orem, Utah. On information and belief, decisions regarding labelling and disclosure of nutritional content are made in its Utah headquarters.

17. Defendant Crumbl IP, LLC is a Utah limited liability company with its headquarters and principal place of business in Orem, Utah. On information and belief, decisions regarding labelling and disclosure of nutritional content are made in its Utah headquarters.

18. Defendant Crumbl Franchising, LLC is a Utah limited liability company with its headquarters and principal place of business in Orem, Utah. On information and belief, decisions regarding labelling and disclosure of nutritional content are made in its Utah headquarters.

19. Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs will seek leave to amend its complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible as hereinafter shown for the occurrences and injuries alleged in this complaint.

20. Each defendant named herein, including those Defendants named as Does, is and was, at all times relevant hereto, the agent of each of the other Defendants, and at all relevant times was acting in the course and scope of such agency and with the authorization, knowledge, permission, consent and ratification of each of the other Defendants.

21. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendants who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code);

AK LAW ACPC
ORANGE COUNTY

specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

23. At least one Plaintiff is a citizen of a state different from the Defendant.

24. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

25. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* U.S.C. § 1332(d)(5)(B).

26. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

27. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

28. Defendant knowingly directs electronic activity into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

29. Defendant also sells the Products to retailers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

30. Some of the Plaintiffs' losses and those of other Class members were sustained in this district.

31. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.



32. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

**FACTUAL BACKGROUND**

**Introduction: Crumbl's Deceptive Scheme**

33. More than two thirds of adults and about a third of children in the United States are overweight or obese.[1]  Overconsumption of calories is one of the primary risk factors for being overweight or obese. *Id*. About half of consumer's annual food dollars and a third of total calories come from food retailers outside the home.  Research indicates that many people do not know, or underestimate, the calorie and nutrient content of these foods. *Id.*  Overconsumption of calories and its associated health risks are often severe and life threatening, including obesity, hypertension, diabetes, coronary heart disease, and certain kinds of cancer.  The total cost of chronic diseases due to American obesity and being overweight was $1.72 trillion dollars—equivalent to 9.3 percent of the U.S gross domestic product.[2] Obesity as a risk factor is by far the greatest contributor to the burden of chronic diseases in the U.S., accounting for 47.1 percent of the total cost of chronic diseases nationwide. Simply put, the total human suffering caused by overconsumption and obesity is one of America's greatest problems today.

34. Defendants are the fastest-growing dessert retailer in the United States with over 800 stores in all 50 states.[3]  Indeed, Crumbl is a goliath in the food industry.  Defendants stated that last year it sold, on average, nearly a million cookies a day.[4]  Defendant gained widespread recognition for its assortment of gourmet cookies, which change daily at its various locations.  Each cookie sells for approximately four dollars ($4.00), which means annual sales could be one billion four hundred sixty thousand dollars

---

[1] *See* 79 Fed. Reg. 71159 (21 C.F.R. Parts 11 and 101) ("…requiring disclosure of certain nutrition information for standard menu items in certain restaurants and retail food establishments.").

[2] Hugh Waters and Marlon Graf*, America's Obesity Crisis: The Health and Economic Costs of Excess Weight*, Milken Institute (October 26, 2018), *available at* https://milkeninstitute.org/report/americas-obesity-crisis-health-and-economic-costs-excess-weight .

[3] https://crumblcookies.com/history

[4] Priya Krishna, "Are Crumbl Cookies the Best of the Worst?" N.Y. Times (April 17, 2023), *available at* https://www.nytimes.com/2023/04/17/dining/crumbl-cookies.html.

($1,460,000,000.00) annually.

35. Unfortunately, Defendants' cookies are also some of the most unhealthy dessert products on the market today, boasting calorie counts as high as 900 per cookie, with high levels of fat, sugar, and cholesterol. Overconsumption of sugar poses especially high health risks to humans and children. Children who consume too much sugar could be at greater risk of becoming obese, hyperactive, and cognitively impaired, as adults, according to the results of a new study of mice led by QUT and published by Frontiers in Neuroscience.[5] It is imperative that Defendants' customers, who are often head of households making nutritional decisions for their children, make their choices with accurate information when consuming these Products.

36. Additionally, as part of Plaintiffs' counsel's investigation, numerous individuals have come forward indicating how devastating and depressing the health effects related to overconsuming Defendants' Products have been on themselves and their families. Many of these individuals have volunteered to be class representatives in this action. Furthermore, Defendants' Products are consumed on a nationwide scale and have the potential to significantly affect the health of a large portion of the American population.

37. Through various marketing channels, Defendant highlights the fact that its cookies can be enjoyed without the guilt typically associated with indulgent treats. It promotes supposedly lower-calorie options as a healthier alternative for those, like Plaintiff, who carefully monitor their calorie intake. By showcasing this aspect of its product line, Defendant appeals to health-conscious consumers seeking delicious treats that nonetheless align with their dietary goals. This focus has helped Defendant establish a unique position in the market, attracting customers who value both taste and nutritional value.

---

[5] Beecher, K., et al. (2021) *Long-Term Overconsumption of Sugar Starting at Adolescence Produces Persistent Hyperactivity and Neurocognitive Deficits in Adulthood*. Frontiers in Neuroscience. doi.org/10.3389/fnins.2021.670430.

AK LAW ACPC
ORANGE COUNTY



*Figure 1 Crumbl's current in-store menu fails to list entire cookie calories adjacent to the menu item in the same font, size, and color as required by FDA regulations and rules.*

38. Defendants have engaged in false and misleading practices by advertising its cookies in a way that misleads consumers into believing they contain fewer calories than they actually do and by providing inaccurate nutritional information. That is, each cookie actually contains a significantly higher calorie content than Defendants represent and imply to consumers such as Plaintiffs.

39. Defendants carry out this deception by representing to consumers such as Plaintiffs that the calorie content of its cookies is dependent on serving size, which "varies by product." What Defendants do not reveal—and in fact takes pains to deliberately conceal from consumers such as Plaintiffs—is that a single cookie can be as many as four servings. Thus, a cookie that is advertised to consumer as containing 190 calories "per serving" actually contains 760 calories per cookie.

40. In fact, many of Defendant's cookies comprise as much as a third or more of an average person's daily recommended caloric intake. Defendant deliberately conceals this fact from consumers such as Plaintiffs.

**FDA's Menu Labelling Requirements**

41. In response to this health epidemic, restaurants and similar retail food establishments with 20 or more locations were required to adopt nutrition labeling requirements under the Federal Food, Drug, and Cosmetic Act (FDCA) and implement regulations that may apply to them. Broadly, these requirements

1   include the menu labeling provisions of section 403(q)(5)(H) of the FDCA, 21 U.S.C. § 343(q)(5)(H), and

2   the final rule on nutrition labeling of standard menu items in restaurants and similar retail food

3   establishments that the FDA published on December 1, 2014 (79 Fed. Reg. 71156) (menu labeling final

4   rule).

5       42. The FDA declared in the menu labeling final rule that "providing nutrition information to

6   consumers for standard menu items will give consumers much needed access to essential nutrition

7   information … to make informed nutritional comparisons … and informed purchases." 79 Fed. Reg. 71161.

8       43. ***Twenty or more locations***. "In the case of food that is a standard menu item that is offered for

9   sale in a restaurant or similar retail food establishment that is part of a chain with 20 or more locations doing

10  business under the same name (regardless of the type of ownership of the locations) and offering for sale

11  substantially the same menu items, the restaurant or similar retail food establishment shall disclose the

12  information described in subclauses (ii)…" *Id*. at (H)(i).

13      44. ***Restaurant Type Food***: "Self-service foods and foods on display that are intended for individual

14  consumption (*e.g*., sandwiches, wraps, and paninis at a deli counter; salads plated by the consumer at a

15  salad bar; ***cookies from a mall cookie counter***; bagels, donuts, rolls offered for individual sale." 79 Fed.

16  Reg. 71158 (emphasis added).

17  **Requirements for Caloric Declaration on Menus**

18      45. "[C]overed establishments [must] post, on menus and menu boards, a succinct statement

19  concerning suggested daily caloric intake designed to enable consumers to understand, in the context of a

20  total daily diet, the significance of the calorie information provided on menus and menu boards. This

21  statement, along with the required calorie information, will enable consumers to better understand the

22  significance of the calorie information provided on menus and menu boards and the potential impacts of

23  overconsumption of calories." *Id.*

24      46. Calorie disclosures for items as prepared and offered for sale, even if in multiple servings,

25  require "a nutrient content disclosure statement adjacent to the name of the standard menu item, so as to be

26  clearly associated with the standard menu item, on the menu listing the item for sale, the number of calories

27  contained in the standard menu item, as usually prepared and offered for sale…" 21 U.S.C. § 343

28  (H)(ii)(I)(aa). "[A] calorie declaration for a self-service food or food on display per displayed food item



**AMENDED CLASS ACTION COMPLAINT**

should be declared ***for the entire item as offered for sale*** and not based on a portion of the food item that is smaller than the food item offered for sale." 79 Fed. Reg. 71221. "For example, if a covered establishment offered a muffin for sale as a self-service food or food on display, the establishment should declare calories for the entire muffin rather than just a portion of the muffin (e.g., one-half or one-third of the muffin) because the entire muffin is the standard menu item offered for sale by the establishment." *Id.*

47. This applies to large, multiple serving muffins, a standard bakery item similar to cookies. Specifically, Section 403(q)(5)(H) of the FD&C Act requires covered establishments to disclose the number of calories contained in a standard menu item ''as usually prepared and offered for sale.''  Calories for standard menu items "as usually prepared and offered for sale" should not "be declared per RACC [Reference Amount Customarily Consumed][6] or by household measure." *Id*. The RACC for a cookie is 30 grams. 21 C.F.R. § 101.12.

48. The only exceptions to these requirements apply to menu items that are usually prepared and offered for sale divided in discrete serving units by the food retailer, where no additional action by the customer is required to divide up the units as they come prepared.  "However, where a multiple-serving standard menu item is not usually prepared and offered for sale divided in discrete serving units, covered establishments must declare calories for the entire menu item listed on the menu or menu board, as usually prepared and offered for sale." *Id*. at 79 Fed. Reg. 71192. *See also* 21 C.F.R. § 101.11(2)(i)(A) ("multiple-serving standard menu items, this means the calories declared must be for the whole menu item listed on the menu or menu board as usually prepared and offered for sale (e.g., "pizza pie: 1600 cal"); or per discrete serving unit as long as the discrete serving unit (e.g., pizza slice) and total number of discrete serving units contained in the menu item are declared on the menu or menu board*, and the menu item is usually prepared and offered for sale divided in discrete serving units* (e.g., "pizza pie: 200 cal, 8 slices")").  In fact, the FDA provides a "Menu Labeling Rule" that describes in plain English how to handle multi-serving menu items

---

[6] "RACCs are based on data set forth in national food consumption surveys and other sources of information on serving sizes of food … [The FDA] developed RACCs as the basis for determining serving sizes for specific products for the purpose of declaration of nutrition information on product label." 79 Fed. Reg. 71193.

AK LAW ACPC
ORANGE COUNTY

in plain English.[7]

49. Finally, serving or unit size must be adjacent to, the same size, and the same font as menu item. "The number of calories must be listed adjacent to the name or the price of the associated standard menu item, in a type size no smaller than the type size of the name or the price of the associated standard menu item, whichever is smaller, in the same color, or a color at least as conspicuous as that used for the name of the associated standard menu item, and with the same contrasting background or a background at least as contrasting as that used for the name of the associated standard menu item." 21 C.F.R. § 101.11(b)(2). *See also* 79 Fed. Reg. 71221 ("Therefore, we have revised § 101.11(b)(2)(iii)(A) to require that the calorie declaration for foods on display and self-service food include the serving or unit on which the calorie content is based. The requirements in § 101.11(b)(2)(iii)(A)(3)(ii) for font size and color will apply to the entire calorie declaration, including the serving or unit used to determine calorie content.").

**Defendants' Fraudulent and Deceptive Practices**

50. Defendants have engaged in false and misleading practices by advertising their cookies in violation of FDA's calorie disclosure requirements for menus, creating a false impression to its consumers that its cookies are low calorie (or lower in calories than stated on its menus), when in reality, they contain enormous amounts of calories, fats, cholesterol, and sugar. The resulting financial windfall to Defendants as a result of this fraudulent scheme has been enormous.

51. Defendant carries out this deception through various methods all of which are in violation of the FDA's mandatory disclosure requirements.

52. First, during the statutory time period, Defendants failed to list the calories for their standard menu item as prepared and offered for sale: a single undivided cookie. This is true for all cookies sold by Defendants during the statutory period. FDA regulations require a food retailer to list the total calories of a standard menu item as it is usually prepared and offered for sale on the menu. Nowhere on the in-store menu does the total calorie amount appear next to any of their cookies.

53. Second, at various times during the statutory time period, Defendant has claimed in its in-store advertisements, on its website, and on its web app, that the calorie content of its cookies is "dependent on

---

[7] *See* Menu Labeling Rule, Key Facts for Industry, Declaring Calories, U.S. Department of Health & Human Services, *at* https://www.fda.gov/media/116010/download?attachment. (Exhibit "A").



serving size," which "varies by product." This is absolutely untrue, as serving size is determined by a standard menu item that is usually prepared and offered for sale according to federal law, regulation, and rules.

54. Third, Defendants were required to list total calories per cookie, or per standard menu item as offered and prepared for sale. However, Defendants intentionally employed a scheme of using the RACC (Reference Amount Customarily Consumed) of 30 grams for a cookie, and applying this to their cookies' total calories despite the FDA's prohibition against this practice. At various points during the statutory period, Defendants advertise their cookies as 4 servings, 5.4 servings, or 5.5 servings, despite the legal requirement that a food retailer should not use the RACC to determine serving size, but rather the calories for a whole, single menu item.

55. Defendants intentionally employed this fraudulent scheme to avoid stating the total caloric amount for its standard menu item, a whole cookie. Defendants' single cookies were never pre-cut or divided into pieces. Defendants never presented images of any of their cookies cut into quarters or other smaller components on their menu. Moreover, nearly all of Defendants' marketing material shows single cookies only. In fact, Defendants' own packaging employs "single cookie" boxes, or other sizes such as 4, 6, and 12 single cookie units. The notion that customers are purchasing their cookies pre-packaged or pre-cut into ¼ servings has no basis in fact or reality and is employed by Defendants to perpetuate their fraudulent scheme.

56. Fourth, calorie declarations must be clear and conspicuous. Defendant failed to follow font, size, and position requirements for its alleged discrete unit servings. Defendant listed the calories from its imaginary ¼ serving size, but then used as asterisk to bury the serving size in a disclaimer that used a lighter colored font and smaller size, hidden away in the corner of the screen, advertisement, or menu.

57. What Defendants do not reveal—and in fact takes pains to deliberately conceal from consumers such as Plaintiffs—is that a single cookie can be as many as four servings currently, and has been up to 6 servings during the statutory period. Thus, a cookie that is advertised to consumer as containing 190 calories "per serving" actually contains 760 calories *per cookie*—making it very far from a "low-calorie" food or a healthy eating option, and is less healthy than the McDonald's Big Mac (590 calories) which at least has fewer calories, more protein, and less sugar. Some cookies even exceed 900 calories, making them the

AK LAW ACPC
ORANGE COUNTY

1  calorie equivalent of a fast-food burger, fries, and soda combo, without the protein and more sugar.

2  Consumers have every right to the benefit of clear and conspicuous legal caloric disclosure requirements

3  on the menu, without obfuscation or hindrance.

4      58. This deliberate misrepresentation concerning the Products' calorie content has deceived

5  consumers such as Plaintiffs and undermined their ability to make informed choices about their calorie

6  intake. By providing misleading information about calorie content and serving size, Defendants have

7  violated consumer trust and demonstrated a disregard for ethical marketing practices. Honesty and

8  transparency are crucial in ensuring consumers can make informed decisions about the products they

9  consume, and it is essential that companies uphold these principles to maintain the trust and confidence of

10 their customers.

11     59. Nutritional disclosures are the chief means by which food product purveyors convey critical

12 information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made

13 in these disclosures. As the California Supreme Court stated in a case involving alleged violations of the

14 UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels

15 matter, that consumers will choose one product over another similar product based on its label." *Kwikset*

16 *Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

17     60. Plaintiffs reviewed Defendants' fraudulent and unlawful calorie disclosures, as described herein,

18 prior to their purchases. Consumers such as Plaintiffs who viewed the Products' calorie disclosures

19 reasonably understood Defendants' statement to mean that the calories stated were per cookie, not per

20 serving. This representation was false.

21     61. Consumers including Plaintiffs reasonably relied on Defendants' fraudulent and unlawful

22 calorie disclosures, as described herein, such that they would not have purchased the Products from

23 Defendants if the truth about the Products was known, or would have only been willing to pay a substantially

24 reduced price had they known that Defendants' representations were false and misleading.

25     62. In the alternative, because of its fraudulent and unlawful calorie disclosures, as described herein,

26 Defendants were enabled to charge a premium for the Products relative to key competitors' products, or

27 relative to the average price charged in the marketplace.

28     63. Consumers including Plaintiffs rely, and in fact did rely, on nutritional disclosure claims made

**AMENDED CLASS ACTION COMPLAINT**


AK LAW ACPC
ORANGE COUNTY

by food product manufacturers such as Defendants, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

64. Plaintiffs suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiffs' injury.

## **PUBLIC OUTCRY – SOCIAL MEDIA**

65. Defendant Crumbl LLC maintains that no reasonable consumer would believe that one of their cookies could be confused for a 200-calorie cookie. However, this assertion is simply false for several reasons.



*Figure 2: A Sweet Street Chocolate Chunk Cookie® – the same size as a Defendant's Products and far less calories*

66. First, large, gourmet cookies are now produced in a manner that is low calorie by using health-conscious ingredients, such as coconut oil, premium honeys, sesame, and nuts for far less calories. Of course, these ingredients are far more expensive than the ingredients Defendants' uses. For instance, Sweet Street produced a nearly 5-inch cookie called Zoe's Crush Manifesto Cookie and lists its product as a single serving per cookie at 260 calories.[8] While there are other more decadent options, even those options are around half of Defendants' cookie at 380 calories.[9]

67. Second, there is actual, ongoing, pervasive confusion in the marketplace. There is a social media outcry where Defendants' customers express strong disapproval of the current marketing scheme. There are videos on Youtube with captions stating, "I just wanted to share this because I'm shocked that something

---

[8] https://shop.sweetstreet.com/zoes-crush-manifesto-cookie-8-count/

[9] https://shop.sweetstreet.com/sandys-amazing-chocolate-chunk-manifesto-cookie-8-count/



could be so misleading and legal."[10]  Similarly, Reddit users have commented by the hundreds about this problem, and some of the comments were factual with respect to consumers with dietary restrictions being deceived.[11]



68. These sentiments are shared by educated and seasoned journalists from various organizations, including experts in public nutrition and health.  The Center for Science in the Public Interest published an article that starts with the statement: "According to the menu board, a Crumbl Milk Chocolate Chip Cookie has 180 calories…but see that asterisk?  The very fine print buried in the lower left corner: "*Calorie counts are per serving, 4 servings per cookie."  Who are you trying to fool, Crumbl??" [12]

69. Last, there are actual consumers in large numbers who are actually confused and willing to testify regarding this.  In one week alone, Plaintiff's counsel received over 3,500 inquiries from consumers all across the nation responding to advertisements about the misleading nature of the menus.

## CLASS ACTION ALLEGATIONS

70. Plaintiffs bring this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 for the following classes:

71. **Nationwide Class**: on behalf of all consumers nationwide who purchased the Products within four years prior to the filing of this Complaint, and

---

[10] Crumbl Cookie's MISLEADING CALORIE COUNT, Dr. Ryan Lowrey, *available at* https://www.youtube.com/watch?v=2IJmbQ2BVOY&t=150s accessed Sept 22, 2023.

[11] https://www.reddit.com/r/CrumblCookies/comments/12l1x9t/does_anyone_else_feel_like_an_idiot_for_believing/ ; *see also* https://www.reddit.com/r/CrumblCookies/comments/ogyprw/2_servings_or_7/

[12] Lindsay Moyer, MS, RDN, Marlena Koch, *How many calories in a Crumbl Cookie?*  Center for Science in the Public Interest, May 23, 2023, *available at* https://www.cspinet.org/article/how-many-calories-are-crumbl-cookie .

72. **Subclasses:** on behalf of Subclasses of consumer who purchased the Products in the states of (1) Utah, (2) California, (3) Texas, (4) Florida, (5) New Jersey, (6) North Carolina, (7) Washington, (8) South Carolina, (9) Oregon, (10) New York, (11) Alabama, and (12) Georgia within four years prior to the filing of this Complaint.

73. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

74. Plaintiffs reserve the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

75. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

76. **Numerosity:** The size of the Class is so large that joinder of all Class members is impracticable. Plaintiffs believe and aver there are thousands of Class members geographically dispersed throughout the nation.

77. **Existence and Predominance of Common Questions of Law and Fact**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

    a) Whether Defendants violated federal law and regulations with respect to caloric declarations for their standard menu items;

    b) Whether Defendants' marketing, advertising, packaging, labeling, and other promotional materials for Defendants' Products is misleading and deceptive;

    c) Whether a reasonable consumer would understand Defendants' calorie claims to indicate that the Products were each a single serving and the cookies were thus low-calorie or lower in calories than represented, and reasonably relied upon those representations;

    d) Whether Defendants were unjustly enriched at the expense of the Plaintiffs and Class members;

    e) the proper amount of actual, special, punitive, or exemplary damages;



f)   the proper scope of injunctive relief; and

g)   the proper amount of attorneys' fees.

78. Defendants engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

79. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

80. All causes of action alleged herein are against all of the Defendants.

81. **Typicality**: Plaintiffs' claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

82. Specifically, all Class members, including Plaintiffs, were harmed in the same way due to Defendants' uniform misconduct described herein; all Class members suffered similar economic injury due to Defendants' misrepresentations; and Plaintiffs seek the same relief as the Class members.

83. There are no defenses available to Defendants that are unique to the named Plaintiffs.

84. These Products are formulated into different flavors. But the Products all make a calorie claim that is deceptive in the same way across all of the Products.

85. The Products are also priced and packaged similarly.

86. Because of these similarities, the resolution of the asserted claims will be identical as between purchased and unpurchased Products.

87. Because both the Products and alleged misrepresentations are substantially similar, Plaintiffs' claims related to the Products that they purchased are typical of the claims available to all purchasers of the Products. As such, Plaintiffs are adequate class representatives for a class of purchasers of all of the Products, regardless whether Plaintiffs purchased every flavor of the Products.

88. **Adequacy of Representation**: Plaintiffs are a fair and adequate representative of the Class because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and is highly motivated to seek redress against Defendants.

89. Furthermore, Plaintiffs have selected competent counsel who is experienced in class action and other complex litigation. Plaintiffs and Plaintiffs' counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

90. **Superiority**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

    a) the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

    b) the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

    c) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

    d) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

91. Unless the Class is certified, Defendants will retain monies received as a result of their unlawful and deceptive conduct alleged herein.

92. Unless a class-wide injunction is issued, Defendants will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiffs will be unable to rely on the Products' advertising or nutritional disclosures in the future, and so will not purchase the Products although they would like to.

93. **Ascertainability**. To the extent ascertainability is required, the Class members are readily

1    ascertainable from Defendants' records and/or its agents' records of retail and online sales, as well as
2    through public notice.

3        94. Defendants have acted on grounds applicable to the Class as a whole, thereby making
4    appropriate final injunctive and declaratory relief concerning the Class as a whole.

5    **FIRST CAUSE OF ACTION: Violation of the Utah Consumer Sales Practices Act (UCSPA)**
6    **Utah Code § 13-11-1 *et seq.* (Nationwide Class)**

7        95. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent
8    necessary, pleads this cause of action in the alternative.

9        96. Defendant's conduct as set forth herein constitutes deceptive acts or practices in connection with
10   a consumer transaction under the UCSPA. Defendant's conduct in perpetrating the described fraudulent
11   scheme against the Nationwide Class was at all material times developed, orchestrated, and implemented
12   in part out of its headquarters in Utah by its senior management.

13       97. The Utah Consumer Sales Practice Act is intended not only to protect consumers but also protect
14   law-abiding competitors and, as much as possible, conform Utah state law to policies of the Federal Trade
15   Commission Act.

16       98. The sales of goods described herein satisfy the definition of a consumer transaction in that it
17   required Plaintiffs and members of the Nationwide Class to expend money for purchase of the Products.

18       99. Defendants knowingly or intentionally represented to Plaintiffs and members of the Nationwide
19   Class that the goods Defendants offered for sale had performance characteristics, uses, benefits, and
20   qualities that they did not, and were of a particular standard, quality, grade, style, or model that they were
21   not. Defendant made the written representations noted herein and such were untrue statements of material
22   fact and/or were misleading in light of the concealed material facts noted herein. This conduct is ongoing
23   as Defendant's false and misleading representations continue unabated to this day.

24       100. Defendant also engaged in the conduct described herein that constitutes deceptive acts or
25   practices or unconscionable acts or practices.

26       101. Plaintiffs and the Nationwide Class are entitled to recover their damages caused by Defendant's
27   violations of Utah Code § 13-11-1 *et seq* pursuant to Utah Code§ 13-11-19 (2) and (4).

28       102. Plaintiffs and the Nationwide Class are entitled to a declaratory judgment that Defendants' acts



and practices described herein violate Utah Code § 13-11-1 *et seq* pursuant to Utah Code § 13-11-19 (1) (a) and (3).

103. Plaintiffs and the National Class are entitled to an injunction and appropriate ancillary relief under Utah Code § 13-11-19 (1) (b) and (3). Defendants' acts and practices described herein violate Utah Code § 13-11-1 *et seq.*

104. Plaintiffs and the Nationwide Class are entitled to an award of attorney's fees under Utah Code § 13-11-19 (5).

**SECOND CAUSE OF ACTION: Violation of the California Consumer Legal Remedies Act, California Civil Code § 1750 *et seq*. (California Subclass)**

105. Plaintiffs and the California Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

106. Plaintiffs and the California Subclass members are "consumers" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

107. The sale of Defendant's Products to Plaintiffs and the California Subclass members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

108. The Products purchased by Plaintiffs and the California Subclass members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

109. As alleged herein, Defendants' business practices are a violation of the CLRA because Defendants deceptively failed to reveal facts that are material in light of the actual calorie content of its Products.

110. Defendants' ongoing failure to provide material facts about its Products on its labels and marketing violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

    a) Defendants' acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

    b) Defendants misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

    c) Defendants' acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;



d) Defendants' acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e) Defendants' acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

111. By reason of the foregoing, Plaintiffs and the California Subclass have been irreparably harmed, entitling them to injunctive relief.

112. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs and the California Subclass are entitled to enjoin publication of misleading and deceptive nutritional representations about Defendant's Products and to recover reasonable attorneys' fees and costs.

113. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs and the California Subclass are entitled to recover actual damages sustained as a result of Defendants' violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

114. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs and the California Subclass are entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION Violation of Texas Deceptive Trade Practices Act (TDTPA), Texas Bus. & Com. Code § 17.01 *et seq*. (Texas Subclass)**

115. Plaintiffs and the Texas Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

116. Plaintiffs and the Texas Subclass have satisfied all prerequisites to suit.

117. Plaintiffs and the Texas Subclass are consumers, as defined under the Texas Deceptive Trade Practices Act, and relied upon the false, misleading, or deceptive acts or practices by Defendant, as set forth above, to their detriment.

118. All of the above-described acts, omissions, and failures of Defendant are cause of an actual and proximate cause of Plaintiffs and the Texas Subclass's damages.

119. Because Defendants' actions and conduct as set forth herein were committed knowingly and intentionally, Plaintiffs and the Texas Subclass are entitled to recover, in addition to all damages described


AK LAW ACPC
ORANGE COUNTY
CALIFORNIA

herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Defendants having knowingly committed its conduct. Additionally, Plaintiffs and the Texas Subclass are ultimately entitled to recover damages in an amount not to exceed three times the amount of mental anguish and actual damages due to Defendant having intentionally committed such conduct.

120. As a result of Defendants' unconscionable, misleading, and deceptive actions and conduct as set forth herein, Plaintiffs and the Texas Subclass has been forced to retain the legal services of the undersigned attorney to protect and pursue these claims on their behalf.

121. Accordingly, Plaintiffs and the Texas Subclass also seeks to recover their costs and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code, as well as any other such damages to which Plaintiffs and the Texas Subclass may show themselves to be justly entitled at law and in equity.

**FOURTH CAUSE OF ACTION: Violation of the Florida Unfair and Deceptive Trade Practices Act (FUDTPA) Chapter 501, Part II, Florida Statutes (Florida Subclass)**

122. Plaintiffs and the Florida Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

123. Section 501.204(1) of the Florida Statutes provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Florida Deceptive and Unfair Trade Practices Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in … deceptive[] or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

124. Defendants were, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Act. § 501.203, Fla. Stat.

125. Relying on the calorie claims made on the Products' labels and marketing materials, consumers purchased the Products believing they were purchasing foods containing a certain number of calories, when they were not.

126. Defendants' use of deceptive, false, and/or misleading Product labels constitutes an unfair or deceptive trade practice within the meaning of the FUDTPA.

127. Defendants' unfair or deceptive trade practice has been the proximate cause of damages sustained by Plaintiffs and the Florida Subclass.

128. Such damages recoverable by Plaintiff and the Florida Subclass include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial, as well as costs of suit and attorneys' fees.

**FIFTH CAUSE Of ACTION: Violation of New Jersey Consumer Fraud Act N.J. Stat. Ann. § 56:8-1 *et seq*. (New Jersey Subclass)**

129. Plaintiffs and the New Jersey Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

130. Plaintiffs and the New Jersey Subclass have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

131. Plaintiffs and the New Jersey Subclass members have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

132. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of N.J. Stat. Ann. § 56:8-1 *et seq*.

133. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material regarding the calorie representations that were made.

134. As a direct and proximate result of this conduct, Plaintiffs and members of the New Jersey Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

135. Defendants' wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

136. Plaintiffs and the New Jersey Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

137. Plaintiffs and the New Jersey Subclass seek actual damages and all other relief allowable under



N.J. Stat. Ann. § 56:8-1 *et seq.* including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**SIXTH CAUSE OF ACTION: Violation of the North Carolina Unfair and Deceptive**

**Trade Practices Act N.C. Gen. Stat. § 75-1.1 *et seq.* (North Carolina Subclass)**

138. Plaintiffs and the North Carolina Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

139. Plaintiffs and the North Carolina Subclass have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

140. Plaintiffs and the North Carolina Subclass have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

141. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of N.C. Gen. Stat. § 75-1.1 et seq.

142. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material regarding the calorie representations that were made.

143. As a direct and proximate result of this conduct, Plaintiffs and members of the North Carolina Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

144. Defendants' wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

145. Plaintiffs and the North Carolina Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

146. Plaintiffs and the North Carolina Subclass seek actual damages and all other relief allowable under N.C. Gen. Stat. § 75-1.1 *et seq.* including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.



**AMENDED CLASS ACTION COMPLAINT**

**SEVENTH CAUSE OF ACTION: Violation of the Washington Consumer Protection Act**

**19.86.010 RCW *et seq*. (Washington Subclass)**

147. Plaintiffs and the Washington Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

148. Plaintiffs and the Washington Subclass have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

149. Plaintiffs and the Washington Subclass have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

150. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of 19.86.010 RCW et seq.

151. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material regarding the calorie representations that were made.

152. As a direct and proximate result of this conduct, Plaintiffs and members of the Washington Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

153. Defendants' wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

154. Plaintiffs and the Washington Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

155. Plaintiffs and the Washington Subclass seek actual damages and all other relief allowable under 19.86.010 RCW *et seq*., including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**EIGHTH CAUSE OF ACTION: Violation of the South Carolina Unfair Trade Practice Act**

**S.C. Code Ann. § 39-5-10, *et seq*. (South Carolina Subclass)**

156. Plaintiffs and the South Carolina Subclass reallege the preceding paragraphs as if fully set forth



1  herein and, to the extent necessary, plead this cause of action in the alternative.

2  157. Plaintiffs and the South Carolina Subclass have standing to pursue this claim as they have

3  suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

4  158. Plaintiffs and the South Carolina Subclass have suffered injury in fact and have lost money or

5  property as a result of Defendants' actions as set forth herein.

6  159. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct

7  and/or business practices within the meaning of S.C. Code Ann. § 39-5-10, et seq.

8  160. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed

9  to reveal facts that are material regarding the calorie representations that were made.

10  161. As a direct and proximate result of this conduct, Plaintiffs and members of the South Carolina

11  Subclass expended money they would not otherwise have spent, and received a lower quality product that

12  did not provide the benefit they were assured it would provide.

13  162. Defendants' wrongful business practices alleged herein constituted, and continue to constitute,

14  a continuing course of unfair competition since it continues to market and sell its products in a manner that

15  offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or

16  substantially injurious to its customers.

17  163. Plaintiffs and the South Carolina Subclass seek an order of this Court enjoining Defendant

18  from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by

19  law, including those acts set forth in this Complaint.

20  164. Plaintiffs and the South Carolina Subclass seek actual damages and all other relief allowable

21  under S.C. Code Ann. § 39-5-10, *et seq*., including as applicable treble, special, exemplary, and punitive

22  damages, as well as fees and costs.

23  **NINTH CAUSE OF ACTION: Violation of the Oregon Unlawful Trade Practices Act**

24  **O.R.S. 646.605, *et seq*. (Oregon Subclass)**

25  165. Plaintiffs and the Oregon Subclass reallege the preceding paragraphs as if fully set forth herein

26  and, to the extent necessary, plead this cause of action in the alternative.

27  166. Plaintiffs and the Oregon Subclass have standing to pursue this claim as they have suffered

28  injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.



167. Plaintiffs and the Oregon Subclass have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

168. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of O.R.S. 646.605, et seq.

169. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material regarding the calorie representations that were made.

170. As a direct and proximate result of this conduct, Plaintiffs and members of the Oregon Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

171. Defendants' wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

172. Plaintiffs and the Oregon Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

173. Plaintiffs and the Oregon Subclass seek actual damages and all other relief allowable under O.R.S. 646.605, *et seq*., including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**TENTH CAUSE OF ACTION: Violation of New York General Business Law Art. 22-A**

**N.Y. Gen. Bus. Law §§ 349 and 350 (New York Subclass)**

174. Plaintiffs and the New York Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

175. Plaintiffs and the New York Subclass have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

176. Plaintiffs and the New York Subclass have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

177. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct



1    and/or business practices within the meaning of N.Y. Gen. Bus. Law §§ 349 and 350.

2        178. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed

3    to reveal facts that are material regarding the calorie representations that were made.

4        179. As a direct and proximate result of this conduct, Plaintiffs and members of the New York

5    Subclass expended money they would not otherwise have spent, and received a lower quality product that

6    did not provide the benefit they were assured it would provide.

7        180. Defendants' wrongful business practices alleged herein constituted, and continue to constitute,

8    a continuing course of unfair competition since it continues to market and sell its products in a manner that

9    offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or

10   substantially injurious to its customers.

11       181. Plaintiffs and the New York Subclass seek an order of this Court enjoining Defendant from

12   continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law,

13   including those acts set forth in this Complaint.

14       182. Plaintiffs and the New York Subclass seek actual damages and all other relief allowable under

15   N.Y. Gen. Bus. Law §§ 349 and 350, including as applicable treble, special, exemplary, and punitive

16   damages, as well as fees and costs.

17   **ELEVENTH CAUSE OF ACTION: Ga. Code Ann. §§ 10-1-393** *et. seq.*

18   **Fair Business Practices Act (Georgia Subclass)**

19       183. Plaintiffs and the Georgia Subclass reallege the preceding paragraphs as if fully set forth herein

20   and, to the extent necessary, plead this cause of action in the alternative.

21       184. Plaintiffs and the Georgia Subclass have standing to pursue this claim as they have suffered

22   injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

23       185. Plaintiffs and the Georgia Subclass have suffered injury in fact and have lost money or property

24   as a result of Defendants' actions as set forth herein.

25       186. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct

26   and/or business practices within the meaning of Ga. Code Ann. §§ 10-1-393 et. seq.

27       187. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed

28   to reveal facts that are material regarding the calorie representations that were made.



188. As a direct and proximate result of this conduct, Plaintiffs and members of the Georgia Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

189. Defendants' wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

190. Plaintiffs and the Georgia Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

191. Plaintiffs and the Georgia Subclass seek actual damages and all other relief allowable under Ga. Code Ann. §§ 10-1-393 *et. seq.*, including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

**TWELFTH CAUSE OF ACTION: Violation of Ala. Code §§ 8-19-5(27) Deceptive Trade Practices Act (Alabama Subclass)**

192. Plaintiffs and the Alabama Subclass reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

193. Plaintiffs and the Alabama Subclass have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

194. Plaintiffs and the Alabama Subclass have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

195. Defendants' actions as alleged in this Complaint constitute fraudulent and deceptive conduct and/or business practices within the meaning of Ala. Code §§ 8-19-5(27) Deceptive Trade Practices Act.

196. Defendants' business practices, as alleged herein, are fraudulent and deceptive because it failed to reveal facts that are material regarding the calorie representations that were made.

197. As a direct and proximate result of this conduct, Plaintiffs and members of the Alabama Subclass expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.



198. Defendants' wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

199. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers.

200. Plaintiffs and the Alabama Subclass seek an order of this Court enjoining Defendant from continuing to engage in fraudulent and deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

201. Plaintiffs and the Alabama Subclass seek actual damages and all other relief allowable under Ala. Code §§ 8-19-5(27) Deceptive Trade Practices Act, including as applicable treble, special, exemplary, and punitive damages, as well as fees and costs.

### THIRTEENTH CAUSE OF ACTION: Unjust Enrichment (Nationwide Class)

202. Plaintiffs and the Nationwide Class reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

203. Defendants, through their marketing and labeling of the Products, misrepresented and deceived consumers regarding the calorie content of the Products.

204. Defendants did so for the purpose of enriching themselves and it in fact enriched themselves by doing so.

205. Consumers, including Plaintiffs, conferred a benefit on Defendants by purchasing the Products, including an effective premium above their true value. Defendants appreciated, accepted, and retained the benefit to the detriment of consumers, including Plaintiffs.

206. Defendants continue to possess monies paid by consumers, including Plaintiffs, to which Defendants are not entitled.

207. Under the circumstances it would be inequitable for Defendants to retain the benefit conferred upon them and Defendants' retention of the benefit violates fundamental principles of justice, equity, and

**AMENDED CLASS ACTION COMPLAINT**



good conscience.

208. Plaintiffs and the Nationwide Class seeks disgorgement of Defendants' ill-gotten gains and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

209. Plaintiffs and the Nationwide Class have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendants' actions as set forth above.

**FOURTEENTH CAUSE OF ACTION: Breach of Implied Warranty (Nationwide Class)**

210. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

211. Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products contained a certain number of calories per cookie.

212. Defendants' implied warranties, and its affirmations of fact and promises made to Plaintiffs and the Nationwide Class and regarding the Products, became part of the basis of the bargain between Defendants and Plaintiffs and the NationwideClass, which creates an implied warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

213. The Products do not conform to the implied warranty that the Products contain only a certain number of calories per cookie, as set forth herein.

214. As a direct and proximate cause of Defendants' breach of implied warranty, Plaintiffs and the Nationwide Class has been injured and harmed in an amount to be determined at trial because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' calorie content; (b) they paid a price premium based on Defendant's implied warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**<u>PRAYER FOR RELIEF</u>**

215. WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class, respectfully request an order certifying the Class, naming Plaintiffs as Class representatives, requiring Defendant to pay for Class notice, and appointing Plaintiffs' counsel as Class counsel, and further seeks the following relief against Defendants:

a) Certifying the Class as requested herein;

b) Declaring that Defendants committed the acts and violated the statutes set forth herein;

c) Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this action;

d) Awarding actual monetary damages and other damages as permitted by law, and/or ordering an accounting by Defendants for any and all profits derived by Defendants from the unlawful, unfair, and/or fraudulent conduct and/or business practices alleged herein, in accordance with the applicable laws and in accordance with the above allegations;

e) All appropriate equitable relief including injunctive relief enjoining Defendants from continuing to conduct business through unlawful, unfair, unconscionable, and/or fraudulent acts and business practices, and requiring Defendants to commence a corrective advertising campaign to notify the public of the calorie count per menu item;

f) Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs;

g) Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

h) Such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated: September 25, 2023                                  Respectfully Submitted,

**AK Law, A.C.P.C**

By: _____

Alan Kang ESQ.
AK LAW A.C.P.C
333 City Blvd. West 17th Floor
Orange, CA 92868
alan@aklawacpc.com
Attorneys for Plaintiffs



**AMENDED CLASS ACTION COMPLAINT**